# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *ex rel.*
MARK J. O'CONNOR and SARA F.
LEIBMAN,

      Plaintiffs,

  v.

UNITED STATES CELLULAR
CORPORATION, *et al.*,

      Defendants.

Case No. 20-cv-2071 (TSC)

**ORAL HEARING REQUESTED**

## DEFENDANTS UNITED STATES CELLULAR CORPORATION, USCC WIRELESS INVESTMENT, INC., AND TELEPHONE AND DATA SYSTEMS, INC.'S REPLY MEMORANDUM IN SUPPORT OF DISMISSAL

# TABLE OF CONTENTS

**Page**

Introduction ..........................................................................................................................1

Argument ..............................................................................................................................2

    I.      Relators Cannot Avoid the Public Disclosure Bar ...............................................2

           A.      Relators Cannot Rescue Their Claims By Adding More Detail to
the Alleged Scheme That Was Publicly Disclosed in the Prior Qui
Tam Amended Complaint. ...........................................................................3

           B.      U.S. Cellular's Ongoing Relationships With King Street, Carrol,
and Barat Were Also Clearly Disclosed to the FCC. ...................................6

           C.      Relators Are Not an Original Source. .........................................................11

    II.     Relators' Failures to Allege Falsity, Scienter, Materiality, and Conspiracy
are Cognizable on a Motion to Dismiss and Fatal to the Second Amended
Complaint ............................................................................................................14

           A.      Relators Have Not Plausibly Alleged Any Violation of FCC
Regulations That Would Have Rendered a Claim "False." .......................15

           B.      Relators Have Not Plausibly Alleged That U.S. Cellular Acted
With Scienter. ............................................................................................19

           C.      Relators Have Not Plausibly Alleged That Any False Statements
Were Material to the FCC's Decisionmaking .............................................20

           D.      Relators Have Not Plausibly Alleged a Conspiracy. .................................23

    III.    Relators' Claims Arising Out of Auctions 58 and 66 are Time-Barred. ..............24

Conclusion ..........................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*,
    435 F.3d 396 (3d Cir. 2006).............................................................................................8

*Bauman v. Butowsky*,
    377 F. Supp. 3d 1 (D.D.C. 2019) ....................................................................................15

*United States ex rel. Bellevue v. Univ. Health Servs. of Hartgrove Inc.*,
    2015 WL 1915493 (N.D. Ill. April 24, 2015)..................................................................10

*Bohanon v. E. Tenn. Human Res. Agency Inc.*,
    2015 WL 5707120 (E.D. Tenn. Sept. 25, 2015) ..............................................................15

*United States ex rel. Campie v. Gilead Scis., Inc.*,
    862 F.3d 890 (9th Cir. 2017) ...........................................................................................22

*Canonsburg Gen. Hosp. v. Sebelius*,
    989 F. Supp. 2d 8 (D.D.C. 2013) .....................................................................................17

*Cause of Action v. Chi. Transit Auth.*,
    815 F.3d 268 (7th Cir. 2016) ...................................................................................5, 9, 10

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
    407 F.3d 1220 (D.C. Cir. 2005).......................................................................................23

*Cox v. Nielsen*,
    2019 WL 1359806 (D.D.C. Mar. 26, 2019).....................................................................11

*D'Agostino v. ev3, Inc.*,
    845 F.3d 1 (1st Cir. 2016)................................................................................................22

*United States ex rel. Doe v. Staples, Inc.*,
    932 F. Supp. 2d 34 (D.D.C. 2013), *aff'd*, 773 F.3d 83 (D.C. Cir. 2014)................................12

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006)................................................................................8

*\*United States ex rel. Findley v. FPC-Boron Employees' Club*,
    105 F.3d 675 (D.C. Cir. 1997)...............................................................................4, 5, 6, 11

*United States ex rel. Folliard v. Comstor Corp.*,
    308 F. Supp. 3d 56 (D.D.C. 2018) ..............................................................................11, 19

*United States ex rel. Harman v. Trinity Indus. Inc.*,
  872 F.3d 645 (5th Cir. 2017) ...................................................................................21, 22, 23

*United States ex rel. John Doe v. John Doe Corp.*,
  960 F.2d 318 (2d Cir. 1992)........................................................................................13

*United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*,
  929 F.3d 721 (D.C. Cir. 2019)....................................................................................23

*United States ex rel. Kelly v. Serco, Inc.*,
  846 F.3d 325 (9th Cir. 2017) ......................................................................................22

*United States ex rel. Marcus v. Hess*,
  317 U.S. 537 (1943)....................................................................................................22

*United States ex rel. Maur v. Hage-Korban*,
  — F.3d —, 2020 WL 7038408 (6th Cir. Dec. 1, 2020)..............................................3

*United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*,
  540 F.3d 1180 (10th Cir. 2008) ...................................................................................3

*United States ex rel. May v. Purdue Pharma L.P.*,
  811 F.3d 636 (4th Cir. 2016) ......................................................................................12

*McGinnis v. District of Columbia*,
  65 F. Supp. 3d 203 (D.D.C. 2014)..............................................................................12

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014)..................................................................................15

*United States ex rel. Miller v. Weston Educ., Inc.*,
  840 F.3d 494 (8th Cir. 2016) ......................................................................................22

*United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*,
  276 F.3d 1032 (8th Cir. 2002) ....................................................................................11

*United States ex rel. Morsell v. Symantec Corp.*,
  2020 WL 5651277 (D.D.C. Mar. 30, 2020).................................................................19

*In re Nat. Gas Royalties*,
  562 F.3d 1032 (10th Cir. 2009) ..................................................................................11

*United States ex rel. Oliver v. Philip Morris USA, Inc.*,
  826 F.3d 466 (D.C. Cir. 2016)...............................................................................3, 4, 5

*United States ex rel. Purcell v. MWI Corp.*,
  807 F.3d 281 (D.C. Cir. 2015)....................................................................................20

*United States ex rel. Reed v. Keypoint Gov't. Sols.*,
   923 F.3d 729 (10th Cir. 2019) ................................................................14

*Rotkiske v. Klemm*,
   140 S. Ct. 355 (2019) ...........................................................................25

*United States ex rel. Settlemire v. District of Columbia*,
   198 F.3d 913 (D.C. Cir. 1999) ...............................................................5

*SNR Wireless LicenseCo, LLC v. FCC*,
   868 F.3d 1021 (D.C. Cir. 2017) ...........................................................21

*Spy Optic Inc, v. Alibaba.Com, Inc.*,
   163 F. Supp. 3d 755 (C.D. Cal. 2015) ...................................................8

*Tel. and Data Sys., Inc. v. FCC*,
   19 F.3d 42 (D.C. Cir. 1994) .................................................................20

*United States v. Care Alternatives*,
   952 F.3d 89 (3d Cir. 2020) ...................................................................19

*Scollick ex rel. United States v. Narula*,
   2020 WL 6544734 (D.D.C. Nov. 6, 2020) ............................................22

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016) .........................................................20, 21, 22, 23

*United States ex rel. Westrick v. Second Chance Body Armor Inc.*,
   128 F. Supp. 3d 1 (D.D.C. 2015) ......................................................1, 21

*Williams v. California*,
   764 F.3d 1002 (9th Cir. 2014) .............................................................17

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
   827 F.3d 201 (1st Cir. 2016) ................................................................14

**Statutes & Rules**

*31 U.S.C. § 3729 .....................................................................................14

*31 U.S.C. § 3730 ..................................................................................2, 12

*31 U.S.C. § 3731 .....................................................................................24

Federal Rule of Evidence 201 ...................................................................8

**Regulations & Rulemakings**

*47 C.F.R. § 1.2110 (2014) ................................................................17, 18

*In re Promoting Interoperability in the 700 MHz Commercial Spectrum*, 27 FCC
    Rcd. 3521 (Mar. 21, 2012) ............................................................................... 8

*Request for Further Comment on Issues Related to Competitive Bidding
    Proceeding; Updating Competitive Bidding Rules*, 80 Fed. Reg. 22690 (April
    23, 2015) ......................................................................................................... 18

*Updating Competitive Bidding Rules*, 80 Fed. Reg. 56764, 56768-69 (Sept. 18,
    2015) ............................................................................................................... 18

**Other Authorities**

Press Release, U.S. Cellular Corp., U.S. Cellular Announces Launch of 4G LTE
    Network Next Month Along With Upcoming Devices (Feb. 1, 2012),
    https://investors.uscellular./news/news-details/2012/US-Cellular-Announces-
    Launch-of-4G-LTE-Network-Next-Month-Along-With-Upcoming-
    Devices/default.aspx ..................................................................................... 13

Press Release, U.S. Cellular Corp., U.S. Cellular Announces Next 4G LTE
    Markets and Mobile Hotspot Availability (Feb. 16, 2012),
    https://investors.uscellular.com/news/news-details//Cellular-Announces-Next-
    4G-LTE-Markets-and-Mobile-Hotspot-Availability/default.aspx ............................. 8

*Asterisks indicate those cases or authorities on which counsel chiefly relies. Local Civ. R. 7(a).

**INTRODUCTION**

Relators' Second Amended Complaint ("SAC") should be dismissed because it is: (a) barred by numerous prior public disclosures, (b) fails to allege essential elements of a claim under the False Claims Act ("FCA"), and (c) includes time-barred claims. Rather than respond directly and on the merits to these crucial defects which U.S. Cellular identified in its motion to dismiss, Relators' opposition largely ignores or evades them. The opposition confirms that the Court should dismiss the SAC with prejudice, for three primary reasons:

First, Relators cannot avoid the FCA's public disclosure bar by adding collateral details to an alleged fraudulent scheme that was disclosed to the government and the public years before this suit was filed. As U.S. Cellular explained, the precise scheme Relators allege here was already the subject of a *qui tam* complaint filed in 2008. Relators primarily respond by arguing that they have alleged "additional conduct" that postdates the prior suit. But this argument has been firmly rejected by the D.C. Circuit. It is not enough for Relators to allege some additional conduct. The public disclosure bar applies even if not every individual *action* alleged in the SAC had been previously revealed to the government, as long as the overall purported *scheme* was publicly disclosed. Here, it clearly was. *See infra* Part I.

Second, Relators largely ignore U.S. Cellular's arguments with respect to falsity, scienter, and materiality—each of which is a required element of all their claims under the FCA. Rather than address those deficiencies, Relators primarily assert that the arguments raise factual disputes and are therefore not cognizable on a motion to dismiss. That is incorrect. U.S. Cellular's motion is premised on Relators' own allegations in the SAC and documents that the Court can consider as incorporated into the SAC, referenced by it, or subject to judicial notice. The SAC's failure to allege falsity, scienter, and materiality—either plausibly or with particularity under Rule 9(b)— provides multiple additional reasons to dismiss Relators' claims. *See infra* Part II.

Third, Relators' claims regarding two of the three spectrum auctions at issue in this case are time-barred. Although private suits under the FCA are subject to a six-year limitations period, Relators commenced this case nearly eight years after the Federal Communications Commission ("FCC") granted Barat the spectrum licenses it won in Auction 66, and more than nine years after the FCC granted Carroll the licenses it won in Auction 58. Relators' arguments that the statute of limitations began to run only years later misapprehend the governing legal standards, and they should be rejected. *See infra* Part III.

Relators have now had three opportunities in this case to state a claim, and more than a decade has passed since the scheme they allege was first alleged in another *qui tam* complaint. Relators have failed to come forward with allegations sufficient to either avoid the public disclosure bar or state a claim on the merits. Their SAC should be dismissed with prejudice.

## ARGUMENT

## I.    Relators Cannot Avoid the Public Disclosure Bar.

As explained in U.S. Cellular's motion to dismiss, *see* U.S. Cellular Mot. at 11-19, the fraud Relators allege here was already the subject of a *qui tam* complaint filed in 2008, *see* Amended Complaint, *Lampert & O'Connor, P.C. v. Carroll Wireless, L.P.*, Docket No. 11, No. 1:07-cv-800 (JDB) (D.D.C. April 24, 2008) ("Prior *Qui Tam* Amended Complaint"), *docketed herein as* Volpe Decl. Ex. A, ECF No. 149-3. The Prior *Qui Tam* Amended Complaint was a public disclosure that bars this lawsuit. *See* 31 U.S.C. § 3730(e)(4).

Relators do not dispute that the alleged fraud they describe here was disclosed publicly over a decade ago. Rather, they attempt to obfuscate the issue by focusing on scattered allegations that postdate the prior suit. Settled D.C. Circuit precedent holds that the public disclosure bar is triggered by the disclosure of an overall alleged scheme, and cannot be defeated merely by pleading additional discrete pieces of conduct. *See infra* Part I.A. But even if Relators

are correct that they *could* overcome the bar by pleading previously undisclosed conduct, they have failed to do so here because their purportedly "additional" allegations are themselves also based on public disclosures. *See infra* Part I.B. Nor are Relators—who are telecom lawyers unaffiliated with any defendant and with no special access to the alleged fraudulent scheme—the original source of any of the SAC's allegations. *See infra* Part I.C. Relators' claims should therefore be dismissed in full under the public disclosure bar.

### A.   Relators Cannot Rescue Their Claims By Adding More Detail to the Alleged Scheme That Was Publicly Disclosed in the Prior *Qui Tam* Amended Complaint.

Relators' sole argument respecting the Prior *Qui Tam* Amended Complaint is that the SAC alleges "additional fraudulent conduct" that postdates the prior suit. Opp. at 16-17. D.C. Circuit precedent is clear, however, that the public disclosure bar applies once an allegedly fraudulent *scheme* has been alleged publicly, regardless of "a relator's ability to reveal [additional] specific instances" of *conduct* in furtherance of the same purported scheme. *United States ex rel. Oliver v. Philip Morris USA, Inc.*, 826 F.3d 466, 472 (D.C. Cir. 2016); *see also United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1187 (10th Cir. 2008); *United States ex rel. Maur v. Hage-Korban*, — F.3d —, 2020 WL 7038408, at *4 (6th Cir. Dec. 1, 2020) ("[T]here need not be a '*complete* identity of allegations, even as to time, place, and manner' to trigger the public-disclosure bar. There need only be a 'substantial identity' . . . such that the prior disclosures depict 'essentially the same' scheme. This is because 'once the government knows the essential facts of a fraudulent scheme,' it generally 'has enough information to discover related frauds.'") (citations omitted).

Relators' failure to allege a scheme distinct from the one alleged in the Prior *Qui Tam* Amended Complaint is dispositive of their claims. As U.S. Cellular has shown in detail, *see* U.S. Cellular Mot. at 14-15, that prior complaint alleged *precisely* the same scheme as the SAC—

down to the parties allegedly involved and the spectrum auctions allegedly affected. Both complaints allege that U.S. Cellular and DiNardo formed King Street, Carroll, and Barat ("the DEs") as sham Designated Entities in order to obtain bid credits and spectrum licenses in FCC Auctions 58, 66, and 73. *Compare, e.g.*, Prior *Qui Tam* Amended Complaint ¶ 3, *with* SAC ¶ 1. All of the "additional conduct" identified in the SAC—the conclusion and performance of additional agreements regarding spectrum management, the submission of additional materials to FCC documenting compliance with the requirements of spectrum ownership, and U.S. Cellular's ultimate acquisition (with FCC approval) of spectrum from Carroll and Barat—was, on its face, part and parcel of the same alleged scheme. *See* Opp. at 16-17.

Relators' attempts to distinguish the Prior *Qui Tam* Amended Complaint misapply binding precedent. Relators first argue that because they allege "additional conduct" postdating the prior complaint, they have necessarily gone beyond "providing more specific details" about what the earlier suit disclosed. Opp. at 17. The D.C. Circuit, however, has expressly and repeatedly rejected that narrow interpretation of the public disclosure bar. Instead, it has held that the bar applies to *qui tam* suits based on a known "general practice," even if a suit covers different instances of the practice, or a different time period in which it occurred, than did the relevant disclosure. *See Oliver*, 826 F.3d at 472-73 (memorandum discussing cigarette price discrepancies at Iceland naval base disclosed "general practice" of overcharging military for cigarettes, barring suit "involv[ing] different time periods, [contract] provisions, and corporate sales"); *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 685-88 (D.C. Cir. 1997) (claims that employees illegally retained money from vending at specific prison in 1990s barred by fact that the "generic" practice had been "specifically identif[ied]" in public reports in 1952 and 1974, and discussed in a 1986 Federal Circuit opinion).

4

Indeed, the present case is even easier to decide on this point than either *Oliver II* (which involved a worldwide pattern of fraud disclosed by a memorandum discussing discrepancies at a single facility) or *Findley* (which involved fraud at a single facility disclosed by decades-old reports of a government-wide pattern). Here, Relators' added allegations "pertain to the same entit[ies]" and describe the same "continuing practice" as the Prior *Qui Tam* Amended Complaint. *See Cause of Action v. Chi. Transit Auth.*, 815 F.3d 268, 281-82 (7th Cir. 2016). The SAC cannot avoid dismissal by describing the same scheme over "a broader timeframe." *Id.*; *see also Oliver*, 826 F.3d at 473 (quoting *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999)) ("Although the Iceland memo predates the sale of cigarettes alleged in the complaint, we have found 'disclosures going back as far as forty years prior to the relators' lawsuit . . . sufficient to disclose the practices which formed the basis of the relators' suit. Accordingly, the time difference does not undermine the disclosure of Philip Morris's general practice.").

The same authorities show that Relators are wrong to argue that disclosures of a "general practice" cannot be "'substantially the same' as the very specific allegations of fraud in the SAC." Opp. at 17. At the outset, the Prior *Qui Tam* Amended Complaint disclosed far more than a general practice—it alleged the exact scheme, involving the same DEs and the same auctions, as the SAC does. But even if it had described only a "generic" practice of U.S. Cellular allegedly misappropriating bid credits through sham DEs, that would still be enough to trigger the public disclosure bar under D.C. Circuit law. Once the contours of a purported fraudulent practice have been publicly disclosed, Relators may not recover based on "allegations which substantially repeat what the public already knows" about the scheme, *Findley*, 105 F.3d at 687—even if they "reveal [additional] specific instances of fraud," *Settlemire*, 198 F.3d at 919.

For the same reason, Relators are likewise incorrect that they may avoid the public disclosure bar by alleging "different violations of the FCA, in the form of reverse false claims." Opp. at 17. Since (as Relators themselves note), "[d]irect and reverse false claims are mirror images of one another," *id.* at 39, the SAC's allegations that bid credits were wrongfully *retained* add nothing to the Prior *Qui Tam* Amended Complaint's allegations that the same credits were wrongfully *obtained* to begin with. Relators' decision to include in the SAC a separate count labeled "reverse false claims" does not in any way amount to allegations of a scheme separate and distinct from the alleged plan to obtain the bid credits as disclosed in the Prior *Qui Tam* Amended Complaint. Indeed, a public disclosure need not cite any provision of the FCA at all. "A relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material [facts] . . . of the violation already have been publicly disclosed. . . . [D]ifferent legal theories do not redeem a complaint based on publicly disclosed transactions." *Findley*, 105 F.3d at 688 (citations omitted).

**B.     U.S. Cellular's Ongoing Relationships With King Street, Carrol, and Barat Were Also Clearly Disclosed to the FCC.**

For the reasons discussed above, the Prior *Qui Tam* Amended Complaint operated as a public disclosure of the same *scheme* Relators allege here. The SAC's allegations of purportedly undisclosed *conduct* postdating the prior suit are therefore irrelevant. But even if the Prior *Qui Tam* Amended Complaint was not independently sufficient to trigger the public disclosure bar— and it is—Relators' "additional" allegations concerning subsequent conduct are also based on public disclosures, specifically documents publicly filed with the FCC.[1] As U.S. Cellular has

---

[1] In order to evade yet another basis for imposing the public disclosure bar, Relators have abandoned the SAC's allegations that certain U.S. Cellular statements to the Securities and Exchange Commission ("SEC") were admissions of improper control over the DEs. *See* SAC ¶¶ 147-49. As explained in U.S. Cellular's motion to dismiss, the relevant SEC accounting standards are fundamentally different than the FCC's standard for *de facto* control. U.S. Cellular

shown, the *facts* underlying Relators' core claim—that U.S. Cellular had attributable relationships with the DEs by virtue of its role in their formation, capitalization, ownership, and operation—are derived almost entirely from public documents. U.S. Cellular Mot. at 15-18.

Relators point in particular to aspects of the U.S. Cellular-King Street relationship that postdate the Prior *Qui Tam* Amended Complaint and purportedly show an attributable relationship—the Management Services Agreement, the 2011 Network Sharing Agreement ("2011 NSA"), and the fact that U.S. Cellular constructed facilities and served consumers under those agreements using King Street's spectrum. Those facts, however, were clearly and repeatedly disclosed long before the instant suit was filed. Relators' so-called "additional" allegations are thus subject to the public disclosure bar not only because they merely add additional details regarding the scheme alleged in the Prior *Qui Tam* Amended Complaint, but also because they add nothing to the relevant public disclosures that postdated the prior action.

The Management Services Agreement, *docketed herein as* Volpe Decl. Ex. D, ECF No. 149-6, was disclosed to the FCC as part of King Street's Form 601 long form application, and its terms were summarized on the FCC's public docket in a DE Report filed in December 2010. *See* King Street 2010 DE Report (SAC Ex. 4), Ex. II Preamble ("Each of the Agreements described . . . was presented to Commission staff as part of [King Street]'s Auction 73 long-form application (FCC Form 601"), ¶ 7 (describing Management Services Agreement). Those terms described exactly the relationship Relators claim was concealed from the FCC.

---

Mot. at 25 n.22. As U.S. Cellular explained, to the extent Relators wished to argue that public statements to the SEC showed control, they necessarily admitted that such control had been publicly disclosed. *Id.* at 18. Relators now concede that U.S. Cellular's statements to the SEC have no relevance to analysis under the FCC's control test. Opp. at 21-22.

King Street specifically disclosed that under the Management Services Agreement, U.S. Cellular would "develop and implement" plans for the construction and maintenance of cellular facilities using King Street's spectrum, as well as plans for the sale, marketing, and billing of services provided through those facilities. *Id.* ¶ 7; *see also* Management Services Agreement, Volpe Decl. Ex. D ¶¶ 2.2 (providing that U.S. Cellular "shall, in accordance with directions and guidance from King Street . . . , supervise . . . day-to-day operations of the King Street Systems). And if there were any doubt that U.S. Cellular would be marketing and billing for that service under its own brand name and using its own customer relationships, the U.S. Cellular press releases announcing the King Street partnership would have erased it by disclosing (among other points), that King Street would be delivering LTE service "to U.S. Cellular's customers" as part of U.S. Cellular's own process of "4G LTE network expansion."[2] Nor did those disclosures escape the notice of the FCC, which *itself acknowledged* that U.S. Cellular's 4G LTE network would "*use* the 700 MHz licenses of its partner, King Street Wireless." *In re Promoting Interoperability in the 700 MHz Commercial Spectrum*, 27 FCC Rcd. 3521, 3536 (Mar. 21, 2012) (emphasis added).

---

[2] Press Release, U.S. Cellular Corp., U.S. Cellular Announces Next 4G LTE Markets and Mobile Hotspot Availability (Feb. 16, 2012), https://investors.uscellular.com/news/news-details/ /Cellular-Announces-Next-4G-LTE-Markets-and-Mobile-Hotspot-Availability/default.aspx. Under Federal Rule of Evidence 201(b)(2), Courts routinely take judicial notice at the motion to dismiss stage of publicly-available websites for the fact of their publication, and as "an indication of what information was in the public realm at the time." *E.g. Spy Optic Inc, v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 762 (C.D. Cal. 2015); *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination'").

Despite Relators' efforts to paint the 2011 NSA as a lifeline for their claims, *see* Opp. at 20-21, it adds little if anything—and certainly nothing of consequence—to the disclosures discussed above.[3] *See* 2011 NSA, *docketed as* Volpe Decl. Ex. C, ECF No. 149-5. Like the Management Services Agreement, it contemplated that U.S. Cellular would construct and operate a cellular system using King Street's spectrum, *id.* § 1(a), to be compatible with U.S. Cellular's own system, *id.* at 2 (4th Whereas Clause), and with U.S. Cellular responsible for customer billing and collection, *id.* § 3. Those terms were also disclosed in substance to the FCC in 2013 during Auction 901, when U.S. Cellular summarized the substantively identical 2012 Network Sharing Agreement ("2012 NSA"). *See* U.S. Cellular FCC Form 680 Long-Form Application for FCC Auction 901, Amended Ex. 2 - REDACTED, at 1, File No. 0005476908 (June 23, 2013) (disclosing that pursuant to a Network Sharing Agreement, "[U.S. Cellular] will build a 4G network using King Street Spectrum" to which U.S. Cellular will be granted access, and that the services provided over that spectrum will be "managed by [U.S. Cellular]" ).[4]

Relators' attempts to distinguish these public disclosures fail. Primarily, Relators argue that the disclosures themselves were calculated to deceive, because they did not state that U.S. Cellular controlled King Street. Opp. at 17-20. But that is as irrelevant as it is incorrect. The SAC itself contains no *additional facts*, beyond those publicly disclosed as discussed above, that raise any further inference of control. Relators are not insiders, and their allegation of control "is not based on . . .direct knowledge." *Cause of Action*, 815 F.3d at 281. "Rather, it is an inference

---

[3] Those terms were also, in any case, not required to be disclosed at all. *See infra* at 16-17 (explaining that the 2011 and 2012 NSAs were not spectrum leases as a matter of law and therefore did not create an "attributable material relationship" under FCC rules).

[4] *Available at* https://auctionfiling.fcc.gov/form175/search175/index.htm (select "Auction 901," search in search bar for file number 0005476908, click on file number, select "Winning Bids" tab, select "Show" in "Attachments" column, scroll down, click "Amended Exhibit 2 - REDACTED).

drawn from the available facts"—facts to which the government had identical access, and an inference which the government "was in an identical position to [draw]." *Id.*; *see also United States ex rel. Bellevue v. Univ. Health Servs. of Hartgrove Inc.*, 2015 WL 1915493, at *7 (N.D. Ill. April 24, 2015) ("Bellevue must make this inference to allege fraud because he has not alleged that he has personal knowledge of Hartgrove's billing practices . . . . But this inference works against Bellevue with respect to [the public disclosure bar]. For if Bellevue can infer scienter from Hartgrove's receipt of payment when it was over census, so can the government."). In other words, where Relators have apparently inferred control from the same facts disclosed to the FCC, they cannot then complain that those facts were insufficient to put the government on the trail of the alleged scheme. "Since the government could have made the same inference based on [the public disclosures], the 'critical elements' of 'fraud' were not missing [from the relevant public record] as [Relators] contend[]. *Bellevue*, 2015 WL 1915493, at *7.

Relators also argue that these public disclosures were insufficient to inform the government that, under the 2011 NSA, King Street was allowing U.S. Cellular to build and operate cellular systems using a broad swath of King Street spectrum. Opp. at 20-21. That is incorrect. As explained above, the practice of network sharing on those terms was disclosed in 2013 during Auction 901, and the fact that U.S. Cellular would be sharing spectrum across the full scope of King Street's licensed markets was disclosed in the news media in February of 2012.[5] It is settled law in the D.C. Circuit that the disclosure of a general practice is sufficient to trigger the public disclosure bar with respect to suits that allege specific instances of the same. *See supra* at 4-6. At the latest, allegations involving the 2011 NSA were barred by 2013 when U.S. Cellular told the FCC that it had entered into a materially indistinguishable network sharing

---

[5] *See* Press Release, *supra* n.3.

agreement with King Street in certain market areas, after previously announcing plans to build out King Street's network in order to better serve U.S. Cellular's own customers.

### C.      Relators Are Not an Original Source.

Because Relators' claims were publicly disclosed, their SAC can survive only if Relators can demonstrate they are an original source under the FCA. However, the cursory original source arguments Relators make in their opposition do not come remotely close to meeting the standard. First, Relators suggest—in two isolated sentences and a single unexplained citation—that *Relator O'Connor* is an original source because *his law firm* was responsible for the Prior *Qui Tam* Amended Complaint. Opp. at 16 & n.15, 17. Relators have waived that argument—which they urge the Court to "[s]et[] aside for [a] moment" that never comes, *see id.* at 16—by failing to develop it, *see, e.g.*, *Cox v. Nielsen*, 2019 WL 1359806, at *14 (D.D.C. Mar. 26, 2019).

But even if Relators had developed it further, that argument would fail on the merits. The statutory definition of "original source" "does not distinguish between those who first bring a claim to light and others who later make the same discovery independently," *United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1048 & n.11 (8th Cir. 2002), and there is "no basis . . . for such an exception" to the public disclosure bar even for prior *qui tam* actions by the *same* relator, *In re Nat. Gas Royalties*, 562 F.3d 1032, 1039 n.3 (10th Cir. 2009). And contrary to Relators' suggestion, Opp. at 16 n.15, the D.C. Circuit has specifically rejected arguments that the public disclosure bar is somehow subject to a free-floating test of a relator's level of "opportunism." *Findley*, 105 F.3d at 685 ("While our interpretation of the jurisdictional bar may on occasion prevent *qui tam* lawsuits that may not be truly 'parasitic,' the blocking of freeloading relators who copy their complaints directly from public disclosures is not the FCA's only concern."); *see also United States ex rel. Folliard v. Comstor Corp.*, 308 F. Supp. 3d 56, 77 n.13 (D.D.C. 2018) ("summarily dispens[ing] as

11

unpersuasive" the argument that a relator's "own prior lawsuits cannot operate as a bar because the FCA is concerned with preventing parasitic lawsuits"); *cf. United States ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636, 642-43 (4th Cir. 2016) (public disclosure bar required dismissal of claim brought by relator who "learned of the relevant facts through knowledge their attorney acquired when previously litigating [a separate suit based on the same fraud]"). Moreover, the Prior *Qui Tam* Amended Complaint was in any case wholly derived from many of the same public FCC filings that independently doom the present action.

Relators likewise argue only briefly that they independently added to what the government already knew. Opp. at 24-26. Relators' discussion of their "independent investigation" is limited to one paragraph, *id.* at 24-25, which nevertheless provides detail far in excess of the single conclusory sentence that actually appears in the SAC, *see* SAC ¶ 37 (reciting without factual elaboration that Relators meet the legal standard to be an "original source" under 31 U.S.C. § 3730(e)(4)(B)). Relators' failure to "allege specific facts" showing what (if any) independent material information they provided the government before filing suit means they cannot defeat the public disclosure bar, *see United States ex rel. Doe v. Staples, Inc.*, 932 F. Supp. 2d 34, 41-42 (D.D.C. 2013), *aff'd,* 773 F.3d 83 (D.C. Cir. 2014), and any "further detail" provided in their opposition should be disregarded because "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *E.g., McGinnis v. District of Columbia*, 65 F. Supp. 3d 203, 211 n.1 (D.D.C. 2014) (citation omitted).

But even if the Court were to consider those belated allegations, they still fail because they add nothing material to what the government already knew. Relators claim for the first time on reply that their "investigation and research" led to "the two NSAs c[oming] to light" because "the Department of Justice required that they be disclosed." Opp. at 11. At the threshold,

Relators' apparent concession that they obtained the 2011 NSA *from the government itself*, *see* U.S. Cellular Mot. at 17 n.14, should put to rest any claim that it was not publicly disclosed. *United States ex rel. John Doe v. John Doe Corp.*, 960 F.2d 318, 320, 322-23 (2d Cir. 1992) (federal agents telling potential witnesses "that they were investigating allegations that John Doe Corp. was fraudulently overcharging the government" constituted a public disclosure). Likewise, Relators' account of their "investigation" that supposedly led the government to request the 2011 NSA—reviewing U.S. Cellular's publicly-filed FCC application for Auction 901, *see* Opp. at 10-11, 25—belies any claim that they provided more than the government already had.

Relators also identify three more pieces of information they can supposedly add—"field tests" showing that U.S. Cellular was providing service on King Street spectrum in two Iowa markets, retail service contracts identifying U.S. Cellular as the service provider in King Street markets, and building permits showing that U.S. Cellular was constructing network facilities on King Street's behalf. Opp. at 24-25. None of that information, however, would materially add to the wealth of public disclosures discussed above—which already revealed that U.S. Cellular would use King Street's spectrum to serve its own customers (including in Iowa[6]), and that it would construct the facilities needed to do so on King Street's behalf. *See supra* Part I.B.

The "mere[] add[ition] [of] . . . details . . . about a known [alleged] fraudulent scheme"— like building permits showing that two U.S. Cellular subsidiaries constructed King Street facilities in Cedar Rapids, *see* SAC ¶ 111, or signal characteristics confirming that U.S. Cellular in fact provides service using King Street spectrum in Iowa City, *see id.* ¶¶ 98-99—"typically

---

[6] *See* Press Release, U.S. Cellular Corp., U.S. Cellular Announces Launch of 4G LTE Network Next Month Along With Upcoming Devices (Feb. 1, 2012), https://investors.uscellular./news /news-details/2012/US-Cellular-Announces-Launch-of-4G-LTE-Network-Next-Month-Along-With-Upcoming-Devices/default.aspx. The contents of this publicly-available website are subject to judicial notice for the fact of their publication. *See supra* n.3.

will be found not to have materially added to the publicly disclosed information." *United States ex rel. Reed v. Keypoint Gov't. Sols.*, 923 F.3d 729, 756-57 (10th Cir. 2019) (adopting standard from *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201 (1st Cir. 2016)). Information is material if it "is sufficiently significant or important that it would be capable of 'influencing the behavior of [the government],'" *id.*, and "offering specific examples" of an allegedly wrongful practice "does not provide any significant new information where the underlying [practice] already has been publicly disclosed," *Winkelman*, 827 F.3d at 212. The fact that Relators conducted their own investigation cannot make up for the fact that those efforts failed to reveal substantively more than the government already knew. *See Reed*, 923 F.3d at 760 ("Ms. Reed also is mistaken that her allegations materially add to the public disclosures because she did her own investigation . . . . [T]he 'materially adds' requirement . . . focuses on the *substance* of the allegations, not the *source*."); *Winkelman*, 827 F.3d at 212 (rejecting original-source claim where "relators trumpet[ed] their personal knowledge").

## II. Relators' Failures to Allege Falsity, Scienter, Materiality, and Conspiracy are Cognizable on a Motion to Dismiss and Fatal to the Second Amended Complaint.

Relators do not dispute that their claims under the FCA require them to plausibly allege falsity, scienter, and materiality—including their conspiracy claim, which requires an underlying statutory violation. U.S. Cellular Mot. at 19-20.[7] With regard to those essential elements, many of Relators' responses boil down to claims that U.S. Cellular is inappropriately raising factual

---

[7] Counts One, Two, Three and Five require falsity, scienter, *and* materiality. U.S. Cellular Mot. at 19-20. In addition to scienter, Relators' Count Four (knowing conversion under 31 U.S.C. § 3729(a)(1)(D)) requires them to show a violation of FCC regulations—which they cannot do for the same reasons explained in Part II.A, *infra*. U.S. Cellular Mot. at 20.

disputes at the pleading stage. That is simply incorrect—Relators are grasping to manufacture factual disputes of any nature to avoid dismissal.[8]

Each of U.S. Cellular's bases for dismissal relies on materials properly considered on a motion to dismiss. Those are either documents that are attached to the SAC, documents it incorporates by reference, matters subject to judicial notice, or documents "appended to [U.S. Cellular's] motion to dismiss whose authenticity is not disputed," and that "are referred to in the [SAC] and integral to [Relators' claims]." *See, e.g. Bauman v. Butowsky*, 377 F. Supp. 3d 1, 6 (D.D.C. 2019) (quoting *Harris v. Amalgamated Transit Union Local 689*, 825 F. Supp. 2d 82, 85 (D.D.C. 2011)). The facts contained in those materials, as well as those alleged in the SAC itself, demonstrate as a matter of law that Relators have not alleged a plausible claim—let alone a particularized one under Rule 9(b). To the limited extent Relators have also responded on the merits, those arguments fail as well.

### A.    Relators Have Not Plausibly Alleged Any Violation of FCC Regulations That Would Have Rendered a Claim "False."

As set out in U.S. Cellular's motion to dismiss, even claims—like Relators'—based on so-called "legally false" certifications ultimately depend on showing an objectively false statement of *fact*. U.S. Cellular Mot. at 20-21 (citing, *inter alia*, *United States ex rel. Winter v. Gardens Reg'l Hosp. and Med. Ctr.*, 953 F.3d 1108, 1119 (9th Cir. 2020)). In the context of

---

[8] Relators make much of the fact that U.S. Cellular cites some cases decided at summary judgment, *see, e.g.*, Opp. at 32, 34 n.27, and suggest that doing so amounts to "ask[ing] the Court to apply the standard of review for summary judgment," Opp. at 2. That is incorrect. U.S. Cellular's motion "challenge[s] the sufficiency of [the facts alleged in the SAC] to meet the *legal* standard" for a claim under the FCA, and "[t]he standard for resolution of those legal arguments is the same at the motion to dismiss stage as it is on a motion for summary judgment." *See Mendoza v. Perez*, 754 F.3d 1002, 1016 n.9 (D.C. Cir. 2014). Put another way, Relators are wrong to argue that cases "address[ing] motions for summary judgment" are broadly "inapplicable to the present motion to dismiss"—"[w]hile the [procedural] standard of review does differ . . . the substantive law is the same." *Bohanon v. E. Tenn. Human Res. Agency Inc.*, 2015 WL 5707120, at *4 (E.D. Tenn. Sept. 25, 2015).

Relators' claims, that means alleging facts plausibly showing an objective violation of FCC regulations governing the DE program, such that certifications of King Street, Carroll, and Barat's eligibility to participate were objectively false. *Id.* Relators have not met that burden.

Nor could they. There was nothing improper or unusual about U.S. Cellular's involvement in the DEs' businesses. Just the opposite—FCC regulations specifically permitted U.S. Cellular to own significant equity in qualifying DEs, and to participate in their management without creating an attributable relationship. U.S. Cellular Mot. at 2-3 (explaining the DE program's goal of *encouraging* investment from large telecommunications providers).

Nevertheless, the SAC alleges that U.S. Cellular's revenues were attributable to the DEs based on two primary theories. *Id.* at 21. First, Relators claim that the 2011 NSA—which they characterize incorrectly as a spectrum lease or a transfer of spectrum—created an "attributable material relationship" between U.S. Cellular and King Street. *Id.* at 21-23. Second, Relators claim that U.S. Cellular's relationship with each of the three DEs satisfied the FCC's test for *de facto* control. *Id.* at 23-26. Both theories—in addition to several others of which the SAC makes mention, *id.* at 26-27—fail to plausibly allege a false claim. As U.S. Cellular explained in detail in its motion to dismiss, the facts cognizable at this stage do not—as a matter of law—state any objective violation of FCC regulations.

First, the 2011 NSA could not have given rise to an "attributable material relationship" under FCC rules, because it was not an agreement "for the lease or resale" of spectrum. U.S. Cellular Mot. at 21-23 (quoting 47 C.F.R. § 1.2110(b)(3)(iv)(A) (2014) (the "AMR Rule")). Relators' response does not address U.S. Cellular's analysis of the AMR Rule's text (which by its terms applies only to leases and resales) or its regulatory history (which shows that the FCC did not regard agreements to "use" spectrum as equivalent to either lease or resale agreements).

Instead, Relators insist without explanation that U.S. Cellular has raised a factual dispute "not capable of resolution on a motion to dismiss." Opp. at 33. That is wrong—regulatory interpretation "is clearly a question of law and not one of fact," *see, e.g.*, *Canonsburg Gen. Hosp. v. Sebelius*, 989 F. Supp. 2d 8, 27-28 (D.D.C. 2013) (quoting *Perley ex rel. Perley v. Palmer*, 157 F.R.D. 452, 457 (N.D. Iowa 1994)); *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) ("This is a question appropriate for resolution on a motion to dismiss because the interpretation of a regulation is a question of law."). The undisputed text of the 2011 NSA is before the Court, the materials needed to interpret the AMR Rule and conclude that it does not apply to the 2011 NSA are a matter of regulatory record, and Relators have failed to identify anything but a garden-variety interpretive question properly presented by a motion to dismiss.

Second, the SAC has not plausibly alleged *de facto* control over the DEs or their spectrum. Its generic assertions that U.S. Cellular "handled decisions," "set terms," and formulated "policy" fall well short of the "who, what, when, where, and how" required under Rule 9(b). U.S. Cellular Mot. at 23-24. Relators identify no more specific allegations in their opposition, simply stating without elaboration that the SAC actually alleges control "in extensive and substantial detail." Opp. at 33. Nor could the FCC have been deceived as to the defendants' overall plan that U.S. Cellular would construct facilities and offer service using King Street spectrum—the agreements setting out that plan were disclosed to the FCC. U.S. Cellular Mot. at 24-26. Indeed, there was no reason for U.S. Cellular or King Street to hide that plan, since "there is no statutory requirement for DEs to directly provide facilities-based service to the public with

each license they hold," *Updating Competitive Bidding Rules*, 80 Fed. Reg. 56764, 56768-69 (Sept. 18, 2015), and no FCC rule has ever imposed one.[9]

Relators likewise decline to defend the substance of their other theories of falsity. Briefly, U.S. Cellular could not have had a *de jure* controlling interest over the DEs as a matter of law, because the SAC alleges it was a limited rather than a general partner. U.S. Cellular Mot. at 26 (discussing 47 C.F.R. § 1.2110(c)(2)(i)). The SAC also failed to allege facts to plausibly suggest that U.S. Cellular and King Street were engaged in a "venture for joint profit," *id.* (discussing 47 C.F.R. § 1.2110(c)(5)(x)), or to identify any terms in the Management Services Agreement that gave U.S. Cellular "authority to make decisions or otherwise engage in practices or activities that determine[d], or significantly influence[d]," the nature, type, terms, or pricing of King Street's services, *id.* at 26-27 (discussing 47 C.F.R. § 1.2110(c)(2)(ii)(H)). Relators, again, are wrong that U.S. Cellular's arguments—which take the SAC's well-pled factual allegations as a given and seek dismissal because they are insufficient to state a claim as a matter of law—are not cognizable on a motion to dismiss. *See* Opp. at 37.

In sum, U.S. Cellular has explained in detail why Relators' claims fail as a matter of law—at the very least, because the SAC identifies no regulatory violation clear enough to show *objective* falsity. U.S. Cellular Mot. at 20 (quoting *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287-88 (D.C. Cir. 2015)). Relators address none of those legal arguments. Instead, they respond in conclusory fashion that there "is no basis" for U.S. Cellular's position, that the

---

[9] The AMR Rule was intended while it was in place to "implement [a] policy that DEs provide facilities-based services," *see Request for Further Comment on Issues Related to Competitive Bidding Proceeding; Updating Competitive Bidding Rules*, 80 Fed. Reg. 22690, 22692 (April 23, 2015), but no such requirement was ever directly imposed by the FCC. As discussed above and in U.S. Cellular's Motion to Dismiss, at 21-23, U.S. Cellular's relationship with King Street clearly fell outside the ambit of the AMR Rule.

SAC actually does allege regulatory violations, and that unspecified factual disputes preclude granting U.S. Cellular's motion to dismiss. Opp. at 33, 37. The Court should disregard these clear attempts to distract from the SAC's failure to state a legal claim.

### B.    Relators Have Not Plausibly Alleged That U.S. Cellular Acted With Scienter.

U.S. Cellular's motion likewise explained three reasons why Relators have failed to allege scienter. First, the SAC essentially failed to address it at all. U.S. Cellular Mot. at 27. Second, no inference of scienter can be drawn from interpretive differences over FCC regulations. *Id.* at 27-29. And third, the facts that Relators allege show improper control were in fact disclosed to the FCC. *Id.* at 29-30. The SAC's allegations do not support a *plausible* inference of scienter, let alone the "strong inference of fraudulent intent" required to state a claim under the FCA. *Comstor*, 308 F. Supp. 3d at 88.

Relators' responses are unavailing. At the threshold, they identify no well-pled facts that support an inference of scienter. Merely recapitulating the SAC's allegations of falsity, *see* Opp. at 34, is insufficient to support the separate element of scienter. *United States v. Care Alternatives*, 952 F.3d 89, 96 (3d Cir. 2020) ("the plain language of the FCA denotes scienter as an element independent of falsity . . . . Combining the two elements into 'falsity' reads the scienter element out of the text of the statute."). Nor are Relators correct that scienter cannot be resolved at the motion to dismiss stage. *See id.* Regardless of how "fact-intensive" questions of scienter may prove at summary judgment or trial, *see United States ex rel. Morsell v. Symantec Corp.*, 2020 WL 5651277, at *29 (D.D.C. Mar. 30, 2020) (declining to decide scienter based on presence of "fact-intensive" issues sufficient to defeat *summary judgment*), it remains Relators' burden at the pleading stage to make factual allegations sufficient to state a claim. Like any other element, where the facts alleged cannot support the inference required—here, a "strong inference of fraudulent intent"—scienter may properly be a basis for dismissal. *See, e.g. Comstor*, 308 F.

Supp. 3d at 88 (noting at motion to dismiss stage that "the scienter requirement under the

FCA . . . is 'addressed through strict enforcement,' and is 'rigorous'").

Finally, Relators mischaracterize U.S. Cellular's argument that the ambiguity of the

relevant FCC regulations (including the *de facto* control standard, which the D.C. Circuit has

criticized as a "meaningless recitation" that enables the FCC to "find compliance or

noncompliance . . . arbitrarily," *Tel. and Data Sys., Inc. v. FCC*, 19 F.3d 42, 50 (D.C. Cir. 1994))

negates any weak inference of scienter that the SAC might otherwise support. *See* U.S. Cellular

Mot. at 27-28. U.S. Cellular does not argue (as Relators suggest, *see* Opp. at 35) that it was

*confused* or *ignorant* regarding the FCC's regulations. Rather, it argues that its good-faith

interpretation of those regulations, which the FCC has never rejected, was plainly reasonable—

such that there is no basis for a Court to infer scienter even if there were some regulatory

violation. *See* U.S. Cellular Mot. at 27-28 (quoting *Purcell*, 807 F.3d at 288, 290).

Even if a regulation's ambiguity is not *determinative* of scienter, Relators still must allege

*facts* sufficient to support a contrary inference in the face of a reasonable interpretation. They

have failed to do so, either by pointing to an FCC interpretation "warning off" U.S. Cellular, *see*

*Purcell*, 807 F.3d at 290, or any other circumstances supporting an inference of knowing fraud.

Because Relators have alleged no facts suggesting fraud notwithstanding U.S. Cellular's legally

reasonable interpretation of the FCC's rules, they have not shown a right to relief above the

speculative level, and their claims should be dismissed.

### C.     Relators Have Not Plausibly Alleged That Any False Statements Were Material to the FCC's Decisionmaking.

As U.S. Cellular has argued, the SAC fails on its face to allege materiality. *See Universal*

*Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016) ("a

misrepresentation about compliance with a statutory, regulatory, or contractual requirement must

be material to the government's payment decision in order to be actionable under the False Claims Act."). Not only are the SAC's allegations of materiality generic and conclusory, U.S. Cellular Mot. at 31, the fact that the FCC actually granted King Street's licenses with full knowledge of the Prior *Qui Tam* Action conclusively negates materiality. *Id.* at 31-32. And moreover, the fact that the FCC has taken no adverse action against any defendant since learning of Relators' allegations also shows that they are immaterial. *Id.* at 31-33; *see also United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 663 (5th Cir. 2017) ("[C]ontinued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the relator in establishing materiality."). That inference is strongly reinforced by the fact that the FCC *has* disqualified other designated entities for *de facto* control by a large business. *See SNR Wireless LicenseCo, LLC v. FCC*, 868 F.3d 1021, 1028 (D.C. Cir. 2017).

Relators offer three responses—that *Escobar*'s materiality requirement does not apply to so-called "fraud in the inducement" claims, that *Escobar* does not apply to express false certifications, and that even under *Escobar* they have pled materiality. All three responses fail.

First, to the extent Relators are relying on a "fraud in the inducement" theory to support their materiality argument, doing so does not allow them to evade the requirement of materiality under the FCA. *Contra* Opp. at 29-30. Rather, inducement claims simply shift the point in time at which materiality is evaluated—rather than evaluating whether false statements were material to any particular decision to pay or forego payment under an existing contract, in a "fraud in the inducement" case the question is whether they were material to the government's agreement to enter the contract in the first place. *See United States ex rel. Westrick v. Second Chance Body Armor Inc.*, 128 F. Supp. 3d 1, 18 (D.D.C. 2015) ("To prevail under [a] fraudulent inducement theory, [the government] must prove not only that the omitted information was material but also

21

that the government was induced by, or relied on, the fraudulent statement or omission when it awarded the contract" (quoting *United States ex rel. Thomas v. Siemens AG*, 991 F. Supp. 2d 540, 569 (E.D. Pa. 2014)); *see also United States ex rel. Marcus v. Hess*, 317 U.S. 537, 543–44 (1943) (recognizing inducement liability under FCA because "[t]he government's money *would never have been placed in the joint fund* for payment to respondents had its agents known the bids were collusive" (emphasis added)). Even if Relators had properly alleged a fraud in the inducement claim—which they did not—the question still remains whether U.S. Cellular's alleged misrepresentations induced—that is, *were material to*—the FCC's decision to grant subsidized licenses to King Street, Carroll, and Barat.[10] That materiality inquiry, like any other, is governed by the standard set out in *Escobar*. *See United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017) (applying *Escobar* to fraudulent inducement claim); *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7–8 (1st Cir. 2016) (same); *United States ex rel. Miller v. Weston Educ., Inc.*, 840 F.3d 494, 504 (8th Cir. 2016) (same).[11]

Second, *Escobar* is not limited to implied certification claims. Indeed, while that case held that implied certifications may be a *type* of "actionable misrepresentation," its discussion of materiality addressed "misrepresentations" generally—without limitation to any one type. *Escobar*, 136 S. Ct. at 2002; *see Harman*, 872 F.3d at 663 (applying *Escobar* to express certification); *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 333 (9th Cir. 2017) (same).

---

[10] Judge Lamberth's recent opinion in *Scollick*, on which Relators extensively rely, is explicit on this point. As *Scollick* explains, "the fraud in the inducement theory already has a strict materiality requirement baked in," and that requirement, like "any understanding of the concept of materiality," "looks to the likely or actual behavior" of the government. *Scollick ex rel. United States v. Narula*, 2020 WL 6544734, at *9 (D.D.C. Nov. 6, 2020).

[11] Tossing consistency to the wind—and trying to have it both ways—Relators argue here that their claims are primarily ones of fraud in the inducement after maintaining strenuously in opposition to U.S. Cellular's public-disclosure-bar arguments that their claims turn not on the FCC's initial award of the licenses and credits but on alleged conduct post-dating such awards.

Third, Relators have plainly failed to plead materiality under the standard set forth in *Escobar*. As noted above, the FCC granted King Street's licenses (the exact decision point at which Relators concede materiality should be evaluated) with full knowledge of not only the defendants' numerous public disclosures, but the Prior *Qui Tam* Amended Complaint itself. *See supra* at 21. Relators argue that the question of the government's knowledge of the Prior *Qui Tam* Amended Complaint is a factual issue that cannot be decided at this stage, Opp. at 31-32, but that is plainly incorrect where the FCC in fact *requested a response to the complaint.* Even at the motion to dismiss stage, that public agency action is subject to judicial notice. *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

Likewise, Relators argue that the FCC's decision to grant the licenses does not mean that any violations were immaterial, only that the FCC incorrectly found no violations. That is a distinction without a difference for purposes of FCA liability—particularly where the FCC has taken no action since the 2012 NSA was disclosed in 2013, and Relators have continued to press their claims—and accepting Relators' attempt to second-guess the basis for the FCC's actions would render *Escobar*'s express direction to consider the government's actual behavior a nullity. *See Harman*, 872 F.3d at 663 ("[C]ontinued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the relator in establishing materiality.").

### D.       Relators Have Not Plausibly Alleged a Conspiracy.

Conspiracy liability depends on "establish[ing] an underlying FCA violation." *United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*, 929 F.3d 721, 728 (D.C. Cir. 2019). Thus, for the same reasons that Relators have failed adequately to allege an underlying FCA violation, their conspiracy claim must also fail. U.S. Cellular Mot. at 20.

**III.    Relators' Claims Arising Out of Auctions 58 and 66 are Time-Barred.**

Non-intervened *qui tam* actions under the FCA must be brought within the longer of six years from a violation, or three years "after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances." 31 U.S.C. § 3731(b)(1)-(2). As U.S. Cellular has pointed out, Relators' claims related to Barat and Carroll are time-barred because they were filed nearly a decade after the FCC's final approval of the alleged false claims for bid credits that Relators seek to prosecute. U.S. Cellular Mot. at 34. Relators' arguments in response misapply the governing legal standards in three respects:

First, Relators argue that their suit is timely because it was filed within 6 years of the unjust enrichment period for Carroll and Barat. Opp. at 41-42. That is a *non sequitur*—the FCA's limitations period runs from each "violation of [the FCA]," 31 U.S.C. § 3731(b)(1), and Relators do not allege that the expiration of the unjust enrichment period was a new false claim.

Second, Relators argue that they are entitled to the benefit of the FCA's 3-year tolling provision, notwithstanding the fact that they filed well over three years after the Prior *Qui Tam* Amended Complaint was filed in 2008 and conclusively disclosed the alleged fraudulent scheme. Relators claim that U.S. Cellular's denial of the 2008 allegations "negated" the government's knowledge, but that is not the test set out in the statute. The question is not whether the government in fact believed it had been defrauded, but whether "facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances." 31 U.S.C. § 3731(b)(2). In other words, even if the government was incorrect to take no action in response to the Prior *Qui Tam* Amended Complaint (and it was not), there is no reasonable dispute that by 2008 it knew "facts material to the right of action" that Relators decided to pursue in 2015.

Third, Relators allege that the statute of limitations was tolled under a general doctrine of fraudulent concealment. But not only was there no actual concealment—since the FCC knew of the Prior *Qui Tam* Amended Complaint—common-law fraudulent concealment has no application here, where Congress has enacted a specific statutory tolling provision keyed to the government's actual or constructive knowledge of "material facts." *See Rotkiske v. Klemm*, 140 S. Ct. 355, 360-61 (2019) (rejecting "[a]textual judicial supplementation" of Congress's "value judgment[s] concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.") (citation omitted).

## CONCLUSION

The FCC has had numerous opportunities to assess U.S. Cellular's compliance with the designated entity rules, and has used them to repeatedly validate U.S. Cellular's practices. The FCC has granted spectrum licenses and bid credits to entities in which U.S. Cellular is an investor in multiple auctions over nearly a decade, including more than once in the wake of the Prior *Qui Tam* Amended Complaint. Relators are opportunists seeking to extract a greenmail settlement on the basis of claims that are foreclosed by the FCA's public disclosure bar and which otherwise lack merit and are time-barred. The SAC should be dismissed with prejudice.

Dated: December 16, 2020                              Respectfully submitted,


                                                     */s/ Frank R. Volpe*

                                                     Frank R. Volpe
                                                     Robert Joseph Conlan, Jr.
                                                     SIDLEY AUSTIN LLP
                                                     1501 K Street, NW
                                                     Washington, DC 20005
                                                     Telephone: 202-736-8000
                                                     Fax: 202-736-8711

fvolpe@sidley.com
rconlan@sidley.com

26