**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**UNITED STATES OF AMERICA**

*ex rel.,*

 **MARK J. O'CONNOR AND SARA F. LEIBMAN,**

            Plaintiffs-Relators,

    v.

**UNITED STATES CELLULAR CORPORATION,** *et al.*

          Defendants.

**Civil Action No.: 20-2071 (TSC)**

---

**PLAINTIFFS/RELATORS' RESPONSE TO DEFENDANTS' NOTICE OF**
**<u>SUPPLEMENTAL AUTHORITY</u>**

Relators Mark J. O'Connor and Sara F. Leibman, by and through counsel, respectfully submit this response to Defendants' Notice of Supplemental Authority (ECF No. 165), *i.e.,* the recent decision in *United States ex rel. Vermont National Telephone Co. v. Northstar Wireless LLC*, Civil Action No. 15-0728 (CKK) (D.D.C. Mar. 23, 2021). Like the Defendants here, the DISH Defendants engaged in a scheme to acquire wireless communications spectrum licenses using bid credits that are reserved exclusively for small and very small businesses ("Designated Entities" or "DEs"). Contrary to the Defendants' claims, however, the decision confirms that the similar scheme alleged here violates the False Claims Act, while the Court's narrow ruling on materiality rests on a theory and facts that differ significantly from the theory and facts in this case.

As fronts for DISH, Northstar Wireless and SNR Wireless won 702 licenses in FCC Auction 97, which ended on January 29, 2015. On March 2, 2015, using $3.3 billion in very small

business credits, the entities paid the total discounted price for the licenses, $10 billion. On May 11, 2015, seven parties petitioned the FCC to deny their license applications on the grounds that they were controlled by DISH, that the failure to disclose DISH's controlling interest was a material misrepresentation, and that they had not adequately disclosed their joint bidding agreements with DISH. Mem. Op. at 18.

On August 18, 2015, the FCC found that, in fact, the entities were controlled by DISH, and were, thus, ineligible for DE benefits. *Id.* at 19. The FCC did not find that the entities had made material misrepresentations or failed to disclose any agreements in their applications, and concluded that the companies could retain the licenses if they paid the full price ($13.3 billion) for them. *Id*. The Defendants elected to pay full price for some of the licenses and to default on the others. The FCC then ordered them to pay the difference between their winning bids and the prices of the re-auctioned licenses, as well as an additional payment equal to the lesser of fifteen percent of their bids, or fifteen percent of the winning bids for the re-auctioned licenses.[1] *Id.*

Against this history, the Vermont Telephone Relators alleged a "narrow" theory of fraud, *i.e.,* that the alleged false claims "were the [Defendants'] certifications . . . that they had disclosed all (oral or written) instruments, agreements and understandings relevant to their claimed designated entity status . . ." *Id*. at 21, 32. The Court found, however, that there were "several unique factors" that "weigh[ed] against the materiality of these allegedly false claims." *Id*. at 33.

First, in light of the FCC's ruling on August 18, 2015 denying DE bid credits to Northstar and SNR, the disclosure of any secret control agreements with DISH would not have changed the FCC's order. *Id*. The Court agreed with the Relators that the government was left with a $3.3

---

[1] The D.C. Circuit affirmed the determination that Northstar and SNR were ineligible for bid credits, but instructed the FCC to permit the entities to renegotiate their agreements with DISH and "cure" the deficiencies that prevented them from being eligible for the bid credits. *SNR Wireless License Co, LLC v. FCC,* 868 F.3d 1021 (D.C. Cir. 2017). On November 23, 2020, the FCC again found the entities ineligible for the bid credits; an appeal is pending.

16458179v1

billion shortfall between March 2, 2015, when they made the discounted payments, and August 15, 2015, when the FCC denied the bid credits. However, the Court said, the question still remained whether the relators had plausibly alleged a false statement capable of influencing the FCC's decision to permit the discounted March 2, 2015 payments. Because the FCC did not review the applicants' long-form applications until *after* the March 2, 2015 payments had been made, it was "not plausible that Northstar Wireless and SNR Wireless's non-disclosure of any secret agreements would have influenced the government's decision to permit a discounted payment of $10 billion on March 2, 2015." *Id*. at 34. Furthermore, the Court concluded, Northstar and SNR did disclose and submit a number of agreements regarding their relationship with DISH, and, from the agreements that were disclosed, the FCC was able to conclude that DISH controlled both entities, making them ineligible for the bid credits.

Unlike the DISH Defendants, the Defendants in this case have enjoyed the benefits of their fraudulently obtained licenses, including retaining over $100 million in DE bid credits for which they were and are ineligible. Unlike the Vermont Telephone Relators, whose claim to materiality rested on the alleged nondisclosure of a secret agreement the disclosure of which would not have changed the outcome, Relators here have alleged numerous instances of *express* false claims, omissions, and certifications by Defendants the exposure of which would have denied them the licenses and/or required the repayment of the bid credits.  These express false claims and certifications were made in the short-form and long-form applications, the Construction Notices, and the DE Annual Reports, and include, *inter alia*:

(1)     false claims and certifications, including in response to specific inquiries from the FCC, that DiNardo had both *de facto* and *de jure* control of King Street (Second Amended Complaint, ¶¶ 78, 79, 84(a), 85, 86, 88);

(2)     false claims and certifications in the applications and DE Annual Reports that King Street had not entered into any agreements that would impact its status as a very small business, including by concealing, failing to report, and mischaracterizing the agreements entered into with U.S. Cellular (Second Amended Complaint, ¶¶ 84(b)-(c), 87, 88, 117, 131-134);

(3)     false claims and certifications in Construction Notices and DE Annual Reports that King Street, rather than U.S. Cellular, had constructed and was operating wireless networks in all 152 markets, had implemented an Airspan Network fixed wireless service system and was serving 35% or more of the licensed area,  had met the four-year construction requirements by constructing and operating mobile LTE networks, was serving at least 35 or 70% of the licensed area and at least 35 or 70% of the population in the licensed area, and had met the ten-year performance requirements in 143 markets (Second Amended Complaint, ¶¶ 119-137);

(4)     entering into and concealing a network sharing agreement that explicitly transferred King Street's spectrum rights for 90 licenses to U.S. Cellular, under which U.S. Cellular financed and built the required network, incorporated the spectrum into its own network, and provided service to its own customers – and which, unlike the alleged non-disclosed agreement in the DISH case, existed in fact and came to light only through Relators' efforts (Second Amended Complaint, ¶¶ 92-97, 135);

(5)     entering into a second purported network sharing agreement carefully drafted to appear to give U.S. Cellular access only to a small portion of the King Street licensed spectrum in order to obtain $40 million in subsidies in yet another auction, while ensuring the continued concealment of the actual network sharing agreement (Second Amended Complaint, ¶¶ 138-146); and

16458179v1

(6)      entering into and carrying out a similar scheme of false claims and certifications with respect to two other purported DEs that were actually controlled by U.S. Cellular (Second Amended Complaint, ¶¶ 150-202).

Unlike in the DISH case, Relators here have alleged the Defendants' violations of the Attributable Material Relationship, Controlling Interests, Management Agreement Controlling Interest, Affiliation and Joint Venture Rules, identified numerous *express* material false claims and certifications, demonstrated U.S. Cellular's actual control of King Street's licensed spectrum, and brought to light the agreement by which King Street explicitly transferred control of its spectrum to U.S. Cellular. Defendants' numerous false claims and certifications resulted in the FCC's decision to award the licenses and bid credits to King Street, Carroll and Barat, while their concealment and omissions of material facts prevented the FCC from requiring the repayment of the fraudulently-obtained bid credits.

Contrary to Defendants' argument, the recent DISH decision confirms previous decisions that false claims and certifications of eligibility for DE benefits are material to the FCC's decision to provide bid credits.

Dated: April 27, 2021                          Respectfully submitted,

                                             /s/ *Adriaen M. Morse, Jr.*

                                             Adriaen M. Morse, Jr., DC Bar No. 483347
                                             Sara M. Lord*
                                             John P. Rowley III*
                                             Micah L. Kanters, DC Bar No. 198563
                                             Georgina C. Shepard*
                                             ARNALL GOLDEN GREGORY LLP
                                             1775 Pennsylvania Avenue NW, Suite 1000
                                             Washington, DC 20006
                                             Telephone:  202.677.4058
                                             Fax:  202.677.4059
                                             adriaen.morse@agg.com
                                             sara.lord@agg.com

5

16458179v1

john.rowley@agg.com
micah.kanters@agg.com
georgina.shepard@agg.com

Benjamin James Vernia, DC Bar No. 441287
THE VERNIA LAW FIRM
1455 Pennsylvania Avenue NW, Suite 400
Washington, DC 20004
Telephone:  202.349.4053
Fax:  866.572.6728
Email: bvernia@vernialaw.com

*Attorneys for Relators Mark J. O'Connor
 and Sara F. Leibman*

*\* Admitted pro hac vice*

6

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on the 27th day of April, 2021, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing, which will automatically send e-mail notification of such filing to all attorneys of record.

*/s/ Micah L. Kanters*

Micah L. Kanters

16458179v1