IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MARK J. O'CONNOR and SARA F. LEIBMAN,<br><br>            Plaintiffs,<br><br>     v.<br><br>UNITED STATES CELLULAR CORPORATION, *et al.*,<br><br>            Defendants. | Case No. 20-CV-2071 (TSC) |

**PLAINTIFF-RELATORS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff-Relators respectfully notify this Court of the recent decision in *United States ex rel. Vermont National Telephone Co. v. Northstar Wireless LLC*, No. 21-7039 (D.C. Cir. May 17, 2022) (attached as Exhibit A), in which the Court of Appeals reversed the decision in *United States ex rel. Vermont National Telephone Co. v. Northstar Wireless LLC,* 531 F. Supp.3d 247 (D.D.C. 2021).  As the Court is aware from previous filings in this matter, there are factual and legal similarities between the *Vermont Telephone* case and the underlying case, including with respect to materiality.

The district court in *Vermont Telephone* concluded that, because the agreements that Northstar Wireless and SNR Wireless disclosed to the FCC "were more than adequate to reveal their ineligibility" for very small business credits in FCC Auction 97, the complaint did not plausibly allege any false claims capable of influencing Northstar's and SNR's eligibility for bidding credits in Auction 97. *Vermont Telephone*, 531 F. Supp. 3d at 270. The Court of Appeals disagreed:

> Specifically, Vermont Telephone alleged that the two companies failed to disclose their agreement to transfer or resell their spectrum to DISH after a five-year non-transfer period. Id. ¶¶ 125–27, 130. Because an applicant's attributable revenues in Auction 97 included those of any entity to which the applicant had agreed to resell "more than 25 percent of the spectrum capacity of any individual license," id. ¶ 56, Northstar's and SNR's undisclosed spectrum-resale arrangements would have increased their attributable revenues beyond the $15-million cap for very-small-business credits, id. ¶ 48. Northstar's and SNR's alleged false certifications and failures to disclose agreements central to their eligibility for bidding credits were certainly "capable of influencing" the Commission's bidding-credit-eligibility determination. (*citation omitted*).

Ex. A at 12.

As the Court further noted, the materiality inquiry focuses on the potential effect of the false statement when it is made, rather than on its actual effect after it is discovered, and at the time Northstar and SNR submitted their applications, "their eligibility for bidding credits depended on their disclosure of all 'agreements, arrangements or understandings of any kind relating to the licenses being auctioned.'" *Id.* at 12-13 (*citations omitted*).

> Moreover, if Northstar and SNR had disclosed their alleged agreements to "[resell] the spectrum purchased during the auction" to DISH, Am. Compl. ¶ 130, they "could not have qualified as 'very small businesses,' and thus could not have received the 25 percent [bidding credits]," id. ¶ 132; see id. ¶ 56. Northstar's and SNR's alleged false certifications and failures to disclose agreements therefore had the potential to affect the Commission's eligibility determinations regarding such bidding credits.

*Id.* at 13.

Like the DISH complaint, the complaint here alleges and demonstrates that the Government attaches great importance to applicants' certifications that they are eligible for DE bid credits, "emphasizing that an applicant who fails to certify that it has disclosed all agreements relating to auctioned licenses will not be permitted to participate in the auction." *Id*. at 14.

Unlike the DISH Defendants, whose eligibility for the licenses was challenged after the auction, U.S. Cellular and King Street Wireless *continued* to certify falsely that they had disclosed all of their numerous agreements during both the license application process and the

unjust enrichment period.  As the underlying Amended Complaint also makes clear, an applicant who fails to certify that it has disclosed all agreements relating to auctioned licenses will not be permitted to obtain or retain DE bid credits, either. The Court of Appeals decision confirms, therefore, that false certifications of eligibility, including the failure to disclose agreements, are also material to the FCC's decision to award licenses with DE bid credits.

The Court of Appeals further found, based on similar, albeit less detailed allegations than are in the underlying complaint, that the relator had adequately pleaded its claims under Rules 8 and 9(b). Like the *Vermont Telephone* relator, Relators here have "pleaded facts 'allow[ing] the court to draw the reasonable inference' that [U.S. Cellular and King Street] falsely certified their disclosure of all agreements related to auctioned licenses when, in fact, they failed to disclose agreements to act on [U.S. Cellular's] behalf and transfer spectrum rights to [U.S. Cellular]. *Id.* at 15. Relators's similar allegations have "also satisfied Rule 9(b) by setting forth detailed allegations regarding the 'time, place, and manner' of the fraudulent scheme."

Dated: May 20, 2022                                    Respectfully submitted,

                                                            Sara M. Lord
                                                            Adriaen M. Morse
                                                            ARNALL GOLDEN GREGORY, LLP
                                                            1775 Pennsylvania Avenue, N.W.
                                                            Suite 1000
                                                            Washington, D.C. 20006
                                                           Tel: (202) 677-4054
                                                           Fax: (202) 677-4055
                                                           sara.lord@agg.com
                                                           adriaen.morse@agg.com

                                                           Benjamin J. Vernia
                                                           THE VERNIA LAW FIRM
                                                           1455 Pennsylvania Avenue, N.W.
                                                           Suite 400

                    Washington, D.C. 20004
                    Tel: (202) 349-4053
                    Fax: (866) 572-6728
                    bvernia@vernialaw.com

*Attorneys for Relators Mark J. O'Connor and Sara F. Leibman*

18195066v1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on this 20th day of May, 2022, she caused an electronic copy of the foregoing document, the Plaintiff-Relators' Notice of Supplemental Authority, to be served on counsel listed below by filing it in the court's electronic-filing (CM/ECF) system, as Local Civil Rule 5.4(d) authorizes:

*Attorneys for Defendants King Street Wireless, L.P., King Street Wireless, Inc., and*

Andrew S. Tulumello, Esq.
Chantale Fiebig
Weil, Gotshall & Manges LLP
2001 M Street, N.W.
Suite 600
Washington, DC 20036-5306
Drew.tulumello@weil.com
Chantale.fiebig@weil.com

*Attorneys for Defendants United States Cellular Corporation, USCC Wireless Investment, Inc., and Telephone and Data Systems, Inc.*

Frank R. Volpe, Esq.
Robert Joseph Conlan, Jr., Esq.
Benjamin M. Mundel
Gabriel Schonfeld
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711
fvolpe@sidley.com
rconlan@sidley.com

*Attorney for Interested Party United States of America*

Darrell C. Valdez
DOJ-USAO
Patrick Henry Building
601 D Street, N.W.
Washington, DC 20530
(202) 252-2507
darrell.valdez@usdoj.gov

/s/ Sara M. Lord

Sara M. Lord

18195066v1