UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**, *ex rel.*
**MARK J. O'CONNOR** and **SARA F. LEIBMAN**

        Plaintiffs-Relators,

v.

**UNITED STATES CELLULAR CORPORATION**, *et al.*,

        Defendants.

Civil Action No. 20-cv-2071 (TSC)

### MEMORANDUM OPINION

Plaintiffs-Relators Mark J. O'Connor and Sara F. Leibman filed this False Claims Act (FCA) action in the United States District Court for the Western District of Oklahoma. ECF No. 118. After the United States declined to intervene, ECF No. 47, the case was transferred upon Defendants' motion to this court on July 30, 2020, ECF No. 126. Defendants have filed two motions to dismiss Plaintiffs-Relators' Second Amended Complaint, ECF Nos. 148, 149. For the reasons set forth below, the court will GRANT both motions and dismiss this case.

#### I.    BACKGROUND

**A. Designated Entities and Spectrum Auctions**

Electromagnetic waves of varying frequencies carry the information necessary for people to enjoy technologies ranging from the radio to Wi-Fi. Second Amended Complaint ¶ 5, ECF No. 118 ("SAC"). Particular sources broadcast on specific electromagnetic frequencies; for example, National Public Radio in Washington, D.C. appears at 88.5 MHz, while C-SPAN is at 90.1 MHz. Those stations do not "own" their frequencies. Instead, the Federal Communications

Commission ("FCC") regulates the electromagnetic spectrum, licensing control over certain bands to private parties. 47 U.S.C. § 151, *et seq.* In doing so, the FCC seeks to ensure the distribution of licenses and frequencies provides a "fair, efficient, and equitable distribution" of services. *Id.* § 307(a), (b). Accordingly, it distributes licenses through a competitive auction system. *See id.* § 309(j).

Unsurprisingly, spectrum auction bids are expensive. *See, e.g.*, Press Release, FCC, *FCC Concludes Largest Ever Spectrum Auction* (Mar. 12, 2020), fcc.gov/document/fcc-concludes-largest-ever-spectrum-auction (detailing an auction with over $7 billion in bids). To ensure fairness and access, Congress and the FCC created the Designated Entity ("DE") program, under which women and minority-owned businesses, as well as small businesses below a certain gross revenue threshold, are offered "bidding credits" for license auctions. 47 C.F.R. § 1.2110(f)(1), (2); *see* 47 U.S.C. § 309(j)(4)(D); *In the Matter of Implementation of Section 309(j) of the Commc'ns Act – Competitive Bidding*, 9 FCC Rcd. 5532 ¶ 15 (1994). Credits are percentage-based—the FCC pledges to credit a certain percentage of a DE's winning bid. 47 C.F.R. § 1.2110(f)(2)(i). For small businesses, the size of a credit varies depending on business revenue (e.g., businesses with less than $4 million in revenue are eligible for bidding credits of 35%). *Id.*

To determine whether a business qualifies as a DE, the FCC calculates the business's gross revenue by aggregating the business's gross revenue, its affiliates, its controlling interests and their affiliates, and the entities with which the business has an attributable material relationship. 47 C.F.R. § 1.2110(b)(1). Affiliates are individuals or entities that directly or indirectly control or are otherwise controlled by the prospective DE business. *Id.* § 1.2110(c)(5). A controlling interest includes any entities that had *de facto* or *de jure* control of the

applicant. *Id.* § 1.2110(c)(2)(i). While *de jure* control is defined by the regulations, *de facto* control is assessed on a "case-by-case basis." *Id.*

The FCC reviews a business's DE status twice. First, the business must complete a pre-auction short-form application certifying that it is eligible for DE status. *See* FCC Form 175, *available at* transition.fcc.gov/Forms/Form175/175.pdf. If the business wins a bid for a spectrum license, it then completes a long-form application, which is a significantly longer questionnaire asking for the business's affiliates and controlling interests, as well as their respective assets and gross revenues. *See* FCC Form 601, *available at* transition.fcc.gov/Forms/Form601/601.pdf.

Once a DE is awarded a license, it may not transfer it to a business that would have otherwise been ineligible for a bidding credit for at least five years, or risk having to pay back some or all of its discount. *See* 47 C.F.R. § 1.2111(b)(2)(i). A DE must also submit an annual report certifying its continued eligibility for DE status. *Id.* § 1.110(n)(1), (2). Despite these requirements, non-qualifying businesses are not barred from interacting with DE entities; in fact, the FCC seeks to promote economic opportunity for DE owners—especially those owned by minorities or women—by encouraging large companies to invest in DEs and avail themselves of the DE-licensed spectrum. *See, e.g.*, *In the Matter of Implementation of Section 309(j) of the Commc'ns Act – Competitive Bidding*, 9 FCC Rcd. 5532 ¶ 15 (1994).

**B. Parties**

Plaintiffs-Relators Mark J. O'Connor and Sara F. Leibman are attorneys specializing in communications law. SAC ¶¶ 21-22. Their Second Amended Complaint names ten defendants connected by a complex web of ownership and partnership, described below. Figure 1, attached to this opinion, maps out those relationships in a chart.

Defendant (1) Telephone and Data Systems, Inc. ("TDS") is a publicly held corporation that owns approximately 80% of Defendant (2) United States Cellular Corporation ("U.S. Cellular"). *Id.* ¶¶ 23-24. U.S. Cellular wholly owns and controls Defendant (3) USCC Wireless Investment, Inc ("USCC"). *Id.* ¶ 25.

Defendant (4) Carroll Wireless, L.P. was a limited partnership between USCC and Defendant (5) Carroll PCS, Inc. ("Carroll Wireless"), which is wholly owned by Defendant (6) Allison Cryor DiNardo. *Id.* ¶¶ 28-29. Following the December 2012 transfer of control of Carroll Wireless, L.P. to U.S. Cellular, Carroll Wireless, L.P, merged with and was dissolved into USCC in December 2018. *Id.*

Defendant (7) Barat Wireless, L.P. was a similar limited partnership between USCC and Defendant (8) Barat Wireless, Inc. ("Barat Wireless"), which is likewise wholly owned by DiNardo. *Id.* ¶¶ 30- 31. Following the September 2012 transfer of control of Barat Wireless, L.P. to U.S. Cellular, Barat Wireless, L.P, merged with USCOS of Rochester, Inc., a wholly owned subsidiary of USCC, in December 2018. *Id.* ¶ 30. In January 2019, USCOC of Rochester, Inc. merged into and with USSC. *Id.* ¶¶ 30-31.

Lastly, Defendant (9) King Street Wireless, L.P. was a limited partnership between USCC and Defendant (10) King Street Wireless, Inc. ("King Street"), which is also wholly owned by DiNardo. *Id.* ¶¶ 26-27.

**C. Factual Background**

This case involves three FCC spectrum auctions: Auction 58, held on June 18, 2004; Auction 66, held on January 31, 2006; and Auction 73, held on August 17, 2007. In each of those auctions, DiNardo registered Defendant entities—the Carroll, Barat, and King Street entities, respectively—as "very small business[es]" with gross revenues under $15 million, and

applied for a 25% bidding credit. *Id.* ¶¶ 154-55, 183-84; 76-77. Each application stated that DiNardo had both *de facto* and *de jure* control of the businesses, and that none had any additional affiliates. *Id.* ¶¶ 78, 155, 184.

The DiNardo-registered businesses won discounted spectrum licenses in all three auctions. Carroll Wireless secured 17 licenses in Auction 58, applying its 25% discount to pay $129.7 million of the $151.8 million that it bid. *Id.* ¶ 158. Barat Wireless also secured 17 licenses in Auction 66, paying $127.1 million for its $169 million bid. *Id.* ¶ 185. And King Street Wireless secured 152 licenses in Auction 73, paying $300.4 million for its $400.6 million bid. *Id.* ¶ 80. In their post-auction long-form applications, all three businesses reaffirmed their eligibility for DE status. *Id.* ¶¶ 84, 159, 187.

In 2007, the law firm of Lampert & O'Connor, P.C., represented by Plaintiff-Relator Mark J. O'Connor, brought an FCA suit in this district. As amended in 2008, the Complaint named as defendants the same ten entities as the ones in this suit. *See* Am. Compl., Case No. 1:07-cv-00800-JDB (D.D.C. Apr. 24, 2008), ECF No. 11 ("2008 Complaint").[1] It also involved the same three FCC spectrum auctions: 58, 66, and 73. *Id.* ¶¶ 2-3.

The 2008 Complaint alleged that the U.S. Cellular entities had "formed sham 'very small business' bidding entities"—the Barat, Carroll, and King Street entities—"for purposes of obtaining 25 percent credits against their gross winning bids" in the respective auctions. *Id.* ¶ 3. "In furtherance of their fraudulent scheme, the Defendants made material misstatements and omissions in their submissions to the FCC for each of the spectrum auctions"—specifically,

---

[1] "A court may take judicial notice of facts contained in public records of other proceedings," *Detroit Int'l Bridge Co. v. Gov't of Canada*, 133 F. Supp. 3d 70, 84 (D.D.C. 2015) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)), along with other "government documents available from reliable sources," *id.* at 85 (citations omitted).

concealing that the U.S. Cellular entities were in control of the DEs all along. *Id.* ¶ 4. The fraudulent records "wrongly represented that the sham "very small businesses" were organized to design, construct, develop, operate, manage and maintain spectrum licenses, and otherwise to engage in the business of providing telecommunications services," but in fact they "acted as fronts for the [U.S. Cellular entities] to acquire licenses to complement [their] existing wireless operating footprint and to block new entrants from competing with [them]." *Id.* ¶¶ 7-8.

Because the FCC had not yet finally approved King Street's application for discount, the 2008 Complaint prompted the FCC to investigate the allegations before granting that approval. The government requested that the 2008 Complaint be partially unsealed, then provided a copy to King Street along with an opportunity to respond to the allegations therein. *See* Letter from R. Noel to T. Gutierrez Re: Auction 73 Application of King Street Wireless, L.P., 24 FCC Rcd. 4527 (Apr. 14, 2009). King Street responded, denying the allegations and asking the FCC to grant its application. Resp. to Bureau Inquiry (Redacted), FCC ULS File No. 0003379814 (May 8, 2009).[2] After completing its review, the FCC granted King Street's application for discounted licenses in Auction 73. SAC ¶ 89; *see* FCC Public Notice, DA-09-2643 (Dec. 30, 2009).[3] The Department of Justice also declined to intervene in the 2008 FCA suit or otherwise take action against the Defendants. *See* Gov't's Notice of Election to Decline Intervention, Case No. 1:07-cv-00800-JDB (D.D.C. Oct. 9, 2009), ECF No. 25. Shortly thereafter, Lampert & O'Connor moved to voluntarily dismiss the action without prejudice. *Id.*, ECF No. 28. The motion was granted. *Id.*, ECF No. 29.

---

[2] *See* Telephone and Data Systems, Inc. et al. Motion to Dismiss, Decl. of Frank Volpe, Ex. B, ECF No. 149-4.

[3] *Available at* https://docs.fcc.gov/public/attachments/DA-09-2643A1.pdf.

**D. Procedural History**

Over five years later, in 2015, Plaintiffs-Relators brought this action in Oklahoma, and the matter was subsequently transferred here. In their Second Amended Complaint, Plaintiffs-Relators claim that Barat, Carroll, and King Street were not genuine DEs and in fact were controlled by U.S. Cellular and its affiliates. SAC ¶¶ 84, 105, 147, 157, 162-65, 171, 178, 190, 200. The Complaint alleges five FCA violations: (1) conspiracy to violate the FCA under 31 U.S.C. § 3729(a)(1)(C); (2) falsely and fraudulently presenting claims for payment from the FCC, in violation of 31 U.S.C. § 3729(a)(1)(A); (3) making or using a false record to receive payments from the FCC, in violation of 31 U.S.C. § 3729(a)(1)(B); (4) unlawful possession of FCC licenses, in violation of 31 U.S.C. § 3729(a)(1)(D); and (5) making or using a false record to avoid making payments to the federal government, in violation of 31 U.S.C. § 3729(a)(1)(G).

Defendants move to dismiss, arguing that Plaintiffs-Relators' claims are barred by the FCA's public disclosure bar, lacking essential pleading elements, and time-barred under the FCA's statute of limitations. Because both motions to dismiss make overlapping substantive arguments, the court will address them jointly.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Procedure 12(b)(6) tests the legal sufficiency of a complaint. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive such a motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the facts alleged allow the court to reasonably infer the defendant's culpability for the

misconduct alleged. *Id.* In drawing such reasonable inferences, the court must grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).

### III.    ANALYSIS

Defendants' Motions to Dismiss present two Rule 12(b)(6) defenses. First, they argue that dismissal is warranted because of the FCA's public disclosure bar, which requires a court to dismiss an action where a relator's claim is based on allegations and transactions made public by sources other than the relator before the complaint was filed. *See* 31 U.S.C. § 3730(e)(4).

The public disclosure bar applies if "substantially the same allegations or transactions" were publicly disclosed in a hearing in which the Government or its agent was a party, in certain federal reports, hearings, audits, or investigations, or in the news media. *Id.* § 3730(e)(4)(A). However, if the relator was the "original source" of the information on which their allegations are based, and that information "materially adds to the publicly disclosed allegations or transactions," the public disclosure bar does not apply. *Id.* § 3730(e)(4)(B); *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467 (2007) (defining "original source").

Second, Defendants argue that regardless of the public disclosure bar, Plaintiffs-Relators have failed to plausibly allege an FCA violation, and that the allegations against Carroll and Barat exceed the statute of limitations. The court need not reach those defenses, however, because it finds that the public disclosure bar is an insurmountable defense to Plaintiffs-Relators' claims.

A.  **The 2008 FCA suit bars this action**

Claims involving "allegations or transactions substantially similar to those in the public domain" cannot survive the public disclosure bar. *United States ex rel. Findley v. FPC-Boron Emps.' Club*, 105 F.3d 675, 682 (D.C. Cir. 1997). The court must determine if "the government already ha[d] enough information to investigate the case and to make a decision whether to prosecute' or [if] the information 'could at least have alerted law-enforcement authorities to the likelihood of wrongdoing.'" *United States ex rel. Davis v. Dist. of Columbia*, 679 F.3d 832, 836 (D.C. Cir. 2012) (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994) (internal quotations omitted)). Because the public domain includes information "disclosed . . . in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party," 31 U.S.C. § 3730(e)(4)(A)(i), allegations or transactions involved in prior litigation can trigger the public disclosure bar, *see, e.g.*, *In re Nat. Gas Royalties*, 562 F.3d 1032, 1039-40 (10th Cir. 2009) (recognizing the preclusive effect of "court documents from . . . a *qui tam* action Relator had filed" years earlier).

The 2008 FCA suit triggers the public disclosure bar. That suit alleged that Carroll, Barat, and King Street were fronts for U.S. Cellular to fraudulently obtain the small business discount for the spectrum in Auctions 58, 66, and 73, respectively. 2008 Complaint ¶¶ 2-3, 6; *see supra* Section I.C. Those are the same core allegations—against the same defendants—that Plaintiffs-Relators' Complaint makes here. *See* SAC ¶ 1. As a result, the 2008 FCA suit "could at least have alerted law-enforcement authorities to the likelihood of wrongdoing" that Plaintiffs-Relators allege here—indeed, that was the suit's express purpose. *Davis*, 679 F.3d at 836. The 2008 Complaint not only could have, but actually did, "enable the government to adequately investigate the case and to make a decision whether to prosecute." *Findley*, 105 F.3d at 688. But

the government declined to prosecute, and the FCC ultimately decided to grant the licenses. The public disclosure bar precludes Plaintiffs-Relators from raising the same allegations here.[4]

## B. The allegations of continued fraud are substantially similar

Plaintiffs-Relators do not meaningfully dispute the preclusive effect of the 2008 FCA suit with respect to the allegations it raised. Instead, they argue that their Complaint here is sufficiently different from the 2008 Complaint to avoid the bar. Principally, they assert that their Complaint "alleges additional fraudulent conduct, as well as additional violations of the FCA, that differ significantly from the fraudulent conduct alleged in the 2008 Complaint." Plaintiffs/Relators' Consolidated Response in Opposition to Defendants' Motions to Dismiss at 16, ECF No. 152 ("Opposition"). What that additional fraud amounts to is Defendants' alleged conduct in maintaining the sham front companies of Carroll, Barat, and King Street—which in fact continued to be under the *de facto* control of U.S. Cellular—while still certifying their DE status so that they could retain their discount on the licenses they had obtained. *Id.* at 16-17 (citing SAC ¶¶ 92-105, 107-14, 118-130, 138-46, 162, 166-70, 173-79, 190-93, 196-97, 199-201).

D.C. Circuit precedent forecloses Plaintiffs-Relators' attempt to distinguish their Complaint from the 2008 FCA suit. A "relator's ability to reveal specific instances of fraud where the general practice has already been publicly disclosed is insufficient" to prevent dismissal under the public disclosure bar. *United States ex rel. Settlemire v. Dist. of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999). That Defendants allegedly continued to perpetuate the fraud to retain their discounts simply provides more specific instances of the general fraudulent

---

[4] Defendants also argue other public filings in FCC proceedings independently impose the public disclosure bar. Because the 2008 FCA suit is alone sufficient to preclude this action, the court does not reach those arguments.

practice that they allegedly initiated to obtain those discounts in the first place. "Cases may arise where disclosures of a practice are insufficient to be considered public disclosures of later instances of fraud," but "where we have before us publicly disclosed information showing how th[ese] same defendant[s] intended to" acquire the same discounts at the same auctions via the same scheme of using front companies to fraudulently pose as small businesses, "it is clear that public disclosure under § 3730(e)(4)(A) has occurred." *Id.* The Complaint therefore cannot get around the public disclosure bar by alleging that Defendants continued the same fraud that has already been disclosed.

C. **Plaintiffs-Relators are not an original source**

Because the Amended Complaint is premised on "substantially the same allegations or transactions" that have already been publicly disclosed, Plaintiffs-Relators' suit must be dismissed unless they qualify as an "original source" by obtaining and sharing "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions," in which case the public disclosure bar would not apply. 31 U.S.C. § 3730(e)(4)(A)-(B); *see Rockwell Int'l Corp.*, 549 U.S. at 467 (defining "original source"). "Congress did not prescribe by mathematical formulae the quantum or centrality of nonpublic information that must be in the hands of the *qui tam* relator in order for suits to proceed." *Quinn*, 14 F.3d at 653. But Plaintiffs-Relators' allegations do not render them an original source here. What little nonpublic information they allege does not materially add to the publicly disclosed information.

Plaintiffs-Relators rely chiefly on one nonpublic document, but it cannot bear the weight they place on it. They repeatedly cite the U.S. Cellular-King Street 2011 Network Sharing Agreement ("2011 NSA") in which King Street allegedly agreed to share its spectrum with U.S. Cellular for a fee, split profits, and allow U.S. Cellular to do most of the network construction

and management.  *See* SAC ¶¶ 92-97, 100-06; Opposition at 8, 10, 15, 20-21.  Again, however, that alleged relationship between the entities at most supports the claim that Defendants continued the substantially similar, and already disclosed, original fraud.  It therefore cannot be a material addition to the publicly disclosed information.  *See, e.g.*, *United States ex rel. Paulos v. Stryker Corp.*, 762 F. 3d 688, 694-95 (8th Cir. 2014) (equating the substantial similarity and material addition standards); *Cause of Action v. Chicago Transit Auth.*, 815 F.3d 267, 283 (7th Cir. 2016) (same).

What is more, the 2011 NSA does not even contain significant nonpublic information.  While the 2011 NSA was never disclosed, U.S. Cellular did provide a 2012 NSA to the FCC in connection with a later auction.  SAC ¶ 142.  The 2012 NSA also established that U.S. Cellular would share in King Street's spectrum and manage services provided over that spectrum—the key evidence that Plaintiffs-Relators proffer in the 2011 NSA.  *See id*. ¶ 143; U.S. Cellular FCC Form 680 Long-Form Application for FCC Auction 901, Amended Ex. 2 - REDACTED, at 1, FCC Applic. File No. 0005476908 (June 23, 2013) ("Pursuant to [the 2012] Network Sharing Agreement . . . [,] King Street agreed to provide 4G services, to be managed by [U.S. Cellular] . . . via King Street's Spectrum.").[5]  And the FCC expressly acknowledged that relationship.  *See Promoting Interoperability in the 700 MHz Com. Spectrum*, 27 FCC Rcd. 3521, 3536 (Mar. 21, 2012).  The main difference between the 2011 and 2012 NSAs appears to be their geographic scope; the 2012 NSA allegedly covered much less territory.  SAC ¶¶ 143-45.  But the spectrum-sharing and management relationship between U.S. Cellular and King Street is the same in both,

---

[5] Available at https://auctionfiling.fcc.gov/form175/search175/index.htm (select "Auction 901," search in search bar for file number 0005476908, select "Winning Bids" tab, select "Show" in "Attachments" column for any entry, then scroll to and click "Amended Exhibit 2 – REDACTED").

and that is the operative fact here for purposes of whether U.S. Cellular was exercising secret, *de facto* control over King Street. As a result, the 2011 NSA does not "add[] in a significant way to the essential factual background" surrounding this case, *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016).

Plaintiffs-Relators also claim that they conducted independent "investigation and research" that have revealed Defendants' fraud. Opposition at 11. But "relators [are] not an original source [when] they at best verif[y] . . . information contained in" the public record, *United States ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466, 479 (D.C. Cir. 2016) (quotation omitted), and that is all that Plaintiffs-Relators have done here. First, they claim that they "commission[ed] spectrum analysis studies showing U.S. Cellular's use and control of the King Street spectrum." Opposition at 8; SAC ¶ 98-99. But as already discussed, the fact that U.S. Cellular and King Street shared spectrum was already public and even expressly recognized by the FCC. Second, Plaintiffs-Relators "contact[ed] King Street's alleged sales team to determine whether King Street offered wireless services to customers (it did not)" and "obtain[ed] customer service contracts that identified U.S. Cellular as the sole provider in King Street markets." Opposition at 8; SAC ¶ 101. But King Street's annual, public DE compliance reports repeatedly stated that King Street had no customers. SAC Ex. 4 at 12, 23, 34, 45, ECF No. 118-4. Accordingly, Plaintiffs-Relators' investigations provide no more than "background information or collateral research"—insufficient to make them an original source. *Oliver*, 826 F.3d at 479 (quotation omitted).

Finally, Plaintiffs-Relators point to their "locating permits and other documents naming U.S. Cellular (or its affiliates) in connection with the build out of the purported King Street networks" and their finding that "King Street never applied for telephone numbers to be able to

offer services to customers, never filed a Form 499A identifying the jurisdictions where it offered services, and never even filed for a Form 499 number." Opposition at 8-9; SAC ¶¶ 111, 112-13. But those permits, documents, and forms are all public, and "[a]ny member of the public could have" looked them up. *Oliver*, 826 F.3d at 480 (quoting *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 523 (3d Cir. 2007)). As a result, they cannot qualify Plaintiffs-Relators for original-source status. *Id.*

## IV.   CONCLUSION

For these reasons, the court will GRANT Defendants' Motions to Dismiss, ECF Nos. 148, 149. A corresponding order will accompany this Memorandum Opinion.

Date: March 22, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge